ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2008 JAN 29 AM 10: 32
CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| GENE L. WILLIAMS, | ) |
| Plaintiff, | ) |
| v. | ) CV 106-037 |
| LOGAN MARSHALL, Sheriff, et al., | ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Gene L. Williams, an inmate incarcerated at Augusta State Medical Prison in Grovetown, Georgia when this action commenced, filed the above-captioned complaint pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding *pro se* and *in forma pauperis*. The matter is now before the Court on Defendants' "Motion for Summary Judgment." (Doc. no. 23). Plaintiff opposes the motion. (Doc. no. 30). For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Defendants.

# I. STATEMENT OF FACTS

A.   **Plaintiff's Version**[1]

Plaintiff avers that, on June 22, 2005, he was incarcerated at the McDuffie County Jail ("MCJ") and that, during his "briefing," Defendant Reynolds stated that he would "see to it that Plaintiff was put on the Doctor's List for the following day" so that Plaintiff could receive insulin. (Doc. no. 30, p. 1). According to Plaintiff, the fact that he is required to take two (2) insulin shots daily was "duly noted and placed in the booking log . . . ."[2] (Id.). Plaintiff contends that, the next day, he discovered that he was not on the "Doctor's List" and was advised to fill out a "sick call request" form. (Id.). Plaintiff maintains that, after he

---

[1] Defendants filed, in addition to the instant motion, a statement of material facts supported by citations to sworn affidavits, and Defendant Marshall filed his first request for admissions. (Doc. nos. 26 & 28). Although Plaintiff responded to the instant motion, he failed to file a separate statement of material facts, any counter-affidavits, or a response to the request for admissions. As such, Defendants argue that factual assertions in Plaintiff's response should not be considered and that Plaintiff cannot contest facts established by his admissions. (Doc. no. 32, p. 1-2). "Rule 36 is a time-saver, designed 'to expedite the trial and to relieve the parties of the cost of proving *facts that will not be disputed at trial.*'" Perez v. Miami-Dade County, 297 F.3d 1255, 1268 (11th Cir. 2002) (citation omitted). Here, the request and the instant motion were filed on the same day in an apparent effort to utilize the request in a manner best paraphrased as "admit that we win the case." In re Carney, 258 F.3d 415, 422 (5th Cir. 2001) (Duplantier, J., dissenting). Furthermore, the request for admissions was filed on May 21, 2007, approximately one month after the close of discovery. As such, the Court will not deem Plaintiff's failure to respond to the untimely request as an admission of facts. See Perez, 297 F.3d at 1269 ("When a party . . . uses the rule . . . with the wild-eyed hope that the other side will fail to answer and therefore admit essential elements . . . the rule's time-saving function ceases . . . ."); Jarvis v. Wal-Mart, Inc., 161 F.R.D. 337, 339 (N.D. Miss. 1995) (denying requests for admissions filed two days before the close of discovery because such requests are subject to discovery deadlines). Finally, the Court will consider factual assertions set forth in Plaintiff's response when addressing the instant motion. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*) (explaining that *pro se* pleadings should be held to "less stringent standards").

[2] Plaintiff explains that all medical requests "go through" Defendant Durden. (Doc. no. 30, p. 2).

2

filled out a "sick call request" form, he was notified that he would not see a physician until June 30, 2005. (Id. at 1-2).

Plaintiff further avers that, after he requested a grievance form on June 24, 2005, he was told that there was "a shortage of forms." (Id. at 2). Plaintiff contends that he was also told that he would have "to wait until the next day when [Defendant Durden] came to work, so he could make some more Grievance Forms, but if [Plaintiff] wanted to, [Plaintiff] could just fill out another sick call request form and that would be treated the same as a Grievance Form." (Id.). According to Plaintiff, on the morning of June 25, 2005, "[he] filled out another sick call request form and that afternoon was when [he] had the heart-attack."[3] (Id.). Plaintiff submits that "[t]he second sick-call request . . . somehow disappeared or they throwed [sic] it away since [he] went to the [h]ospital." (Id.). Plaintiff concludes, "Based on the circumstances and time frame of the incident, [he] was unable to fill out a Grievance Form." (Id. at 2). Plaintiff provides a copy of a McDuffie County Detention Center "Inmate Request for Medical Services" form, dated June 24, 2005, wherein he states, "I've [sic] been in here for 3 days. I need my diabetic medicine. I need to see the doctor."[4] (Id. at 10).

---

[3] Plaintiff maintains that, sometime prior to his alleged heart-attack, Defendant Crowder disregarded his request to have his blood sugar checked and "used her beliefs in Christianity to attempt to appease Plaintiff in his need to check out his blood sugar . . . ." (Doc. no. 30, p. 3).

[4] Plaintiff also submits letters from Dr. Stephen R. Broadwater and Mr. Peter D. Johnson, dated January 20, 2006 and July 5, 2005, respectively, which are addressed to the Honorable Dudley H. Bowen, Jr., United States District Judge. (Doc. no. 30, pp. 6-9). The letters set forth opinions concerning the medical treatment Plaintiff allegedly received while incarcerated at the MCJ. (Id. at 7 & 9). However, Plaintiff did not submit the sworn affidavits of these individuals and neither letter is notarized. Regardless, the Court need not resolve this issue to address the instant motion for summary judgment.

B.  **Defendants' Version**

Defendants aver that, although Plaintiff was incarcerated at the MCJ on June 22, 2005, Plaintiff did not "show or produce an actual prescription for insulin . . . ." (Doc. no. 26, ¶ 3). According to Defendants, insulin was not provided to the staff upon Plaintiff's arrival at the MCJ. (Id. ¶ 4). Nevertheless, Defendants contend that, during Plaintiff's incarceration at the MCJ, he was properly provided with all medications prescribed to him, when such medications were actually present and available. (Id. ¶ 5).

Defendants Crowder and Reynolds were employed as detention officers at the MCJ in June 2005. (Id., Crowder Aff., ¶ 3 & Reynolds Aff., ¶ 2). According to Defendant Reynolds, at the end of his June 22-23, 2005 shift, he passed on the medical information provided to him about Plaintiff to the oncoming shift, in accordance with MCJ procedure. (Id., Reynolds Aff., ¶ 3). Defendant Crowder maintains that Plaintiff never discussed, *inter alia*, his diabetic condition with her on or before June 25, 2005. (Doc. no. 26, Crowder Aff., ¶ 3). Although Defendant Crowder admits that, prior to June 25, 2005, she had heard of diabetes, she submits that she did not know about its symptoms or treatment, the nature of insulin, or the consequences associated with insulin depravation at that time. (Id. ¶ 4). Defendants Crowder and Reynolds explain that, to the extent that they observed Plaintiff on or before June 25, 2005, their observations did not cause them to believe that he required medical care outside of the MCJ.[5] (Id., Crowder & Reynolds Affs., ¶ 5).

Defendant Durden avers that, in June 2005, he was employed as the Chief Jailor for the MCJ, and thus, he was the record custodian. (Id., Durden Aff. ¶ 2). Prior to discovering

---

[5]Defendants explain that, from the time Plaintiff was incarcerated until the time he was discovered on the floor on morning of June 25, 2005, Plaintiff had no visible signs of injury or illness. (Doc. no. 26, ¶ 11).

4

Plaintiff on the floor on June 25, 2005, Defendant Durden had not received any information that Plaintiff was diabetic, requested examination by a physician, or needed insulin.[6] (Id., Second Durden Aff. ¶ 2). However, after Defendant Durden discovered Plaintiff on the floor, he immediately called emergency medical personnel. (Id. ¶ 3). Defendants maintain that Plaintiff was then transported to a hospital for medical treatment associated with chest pain. (Doc. no. 26, ¶ 17). After receiving treatment, Plaintiff returned to the MCJ, where he remained for a number of days without any other incidents. (Id. ¶ 18).

Defendants also aver that, in June and July of 2005, Defendant Marshall was the Sheriff of McDuffie County, Georgia. (Doc. no. 26, Marshall Aff. ¶ 2). According to Defendants, Plaintiff had no interaction with Defendant Marshall concerning his medical condition or treatment. (Doc. no. 26, ¶ 20). Defendants maintain that, in June and July 2005, the McDuffie County Sheriff's Office had written policies and procedures concerning medical treatment provided to inmates at the MCJ. (Id. ¶ 21). Defendants contend that the MCJ provided "inmates access to a doctor on no less than a weekly basis," emergency medical care as needed, and pharmaceuticals as prescribed. (Id. ¶ 22).

Finally, Defendants aver that Plaintiff was not denied access to medical treatment or medications by any Defendant or employee of the McDuffie County Sheriff's Department. (Id. ¶¶ 23-24). Defendants contend that all decisions regarding Plaintiff's treatment were made by healthcare professionals. (Id. ¶ 25). Despite the fact that Plaintiff was transported to a hospital for medical treatment after he was discovered on the floor, Defendants maintain that, as a result of Plaintiff's incarceration at the MCJ, he did not sustain a physical injury

---

[6]Defendants maintain that, while incarcerated at the MCJ, Plaintiff had no interaction with Defendant Durden concerning his medical condition or treatment. (Doc. no. 26, ¶ 15).

5

and that no medical condition from which Plaintiff suffered became worse due to a lack of medical care. (Id. ¶¶ 26-27). Nevertheless, Defendants explain that there was an administrative grievance procedure, whereby inmates could assert complaints and obtain resolution regarding conduct of officers or medical staff at the time Plaintiff was incarcerated at the MCJ.[7] (Id. ¶ 28). According to Defendants, however, Plaintiff did not file any grievance or otherwise participate in the MCJ's grievance procedure. (Id. ¶ 30).

## C. The Administrative Grievance Process

The key issue in this case is whether Plaintiff has complied with § 1997e(a). Before assessing this question, it will be helpful to explain MCJ's grievance procedure, which is set forth in the MCJ Inmate Handbook provided to inmates and posted in the inmate living quarters. (Doc. no. 26, Durden Aff. ¶ 4). Inmates are entitled to communicate complaints to the MCJ Chief Jailor. (Id., Exs. 1 & 3). To that end, grievance forms are made available to all inmates upon request. (Id., Ex. 3). Although inmates must communicate grievances in writing,[8] grievances may be given to any staff member for prompt transmittal to the Chief Jailor. (Id., Ex. 1, p. 1). Upon receipt of the grievance, the Chief Jailor responds in writing. (Id., Ex. 3). However, inmates may appeal the Chief Jailor's decision to the Sheriff within 72 hours of grievance decision. (Id.). All inmate grievance and appeal forms are retained in the respective inmates' files. (Id., Durden Aff. ¶ 6).

---

[7]Defendants assert that the grievance procedure was set forth in the Inmate Handbook, which was provided to inmates, and posted in plain view in the inmate living quarters. (Doc. no. 26, ¶ 29).

[8]"All grievances must fully describe the factual basis and circumstances of the alleged incident or situation and include a specific complaint and signed by the staff member when picked up." (Doc. no. 26, Ex. 1, p. 1; see also doc. no. 26, Ex. 2 ("McDuffie County Detention Center Inmate Grievance Form")).

6

Having clarified the factual background of the case, the Court turns its attention to the merits of the motion for summary judgment.

## II. DISCUSSION

A.  **Summary Judgment Standard**

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Applicable substantive law identifies which facts are material in a given case.[9] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex

---

[9]The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

7

Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Id. at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

**B.    Unique Difficulties Posed by the Above-Captioned Case**

The Court notes that factual determinations regarding exhaustion (or lack thereof) under § 1997e(a) often pose problems for the district courts. In the instant case, the Court is faced with a "swearing match" between jail officials and an inmate regarding whether the actions of jail staff rendered administrative remedies "unavailable." As a general rule, "[i]ssues of credibility and the weight afforded to certain evidence are determinations appropriately made by a finder of fact and not a court deciding summary judgment." McCormick, 333 F.3d at 1240 n.7. However, the Honorable William T. Moore, Jr., Chief United States District Judge, has adopted the view that, "[b]ecause a motion contesting a

8

prisoner's exhaustion of administrative remedies does not reach the merits of [the prisoner's] underlying claim, 'the court may look beyond the pleadings and decide disputed issues of fact.'"[10] Lucus v. Barnes, Civil Case No. 407-002, 2007 WL 1428884, at *3 (S.D. Ga. May 14, 2007) (citing Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003), *cert. denied*, 540 U.S. 810 (2003)).

> Furthermore,
>
> in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether "the jury could reasonably find for the plaintiff," Anderson, 477 U.S. at 252, and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account.

Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) (holding that the district court did not err in granting the motion for summary judgment, when the plaintiff's "largely unsubstantiated" testimony was so inconsistent and improbable that no reasonable juror would undertake the "suspension of disbelief" necessary to credit the allegations). Similarly, the Supreme Court has explained that "discredited testimony" cannot be relied upon to resist summary judgment. See Anderson, 477 U.S. at 256-57. Thus, to the extent Plaintiff relies upon his own self-serving and unsubstantiated allegations concerning the exhaustion of administrative remedies, the Court properly considers whether a "reasonable juror would undertake the suspension of disbelief necessary to credit the allegations." Jeffreys, 426 F.3d at 555.

---

[10]The Court also notes that the Honorable Dudley H. Bowen, Jr., United States District Judge, has adopted this view. Stephens v. Howerton, Civil Case No. CV 105-171, 2007 WL 181024, at *2 (S.D. Ga. June 21, 2007), *appeal docketed*, 07-13243-B (11th Cir. June 12, 2007) (citing Lucus, 2007 WL 1428884, at *3).

Of course, the Court is empowered to conduct an evidentiary hearing if necessary to resolve the exhaustion issue. See, e.g., Johnson v. Garraghty, 57 F. Supp.2d 321, 329 (E.D. Va. 1999). Nevertheless, the need for such a hearing would be rare.[11] See, e.g., Knuckles El v. Toombs, 215 F.3d 640, 642 (6th Cir. 2000) ("[C]ourts should not have to hold time-consuming evidentiary hearings in order simply to determine whether it should reach the merits or decline under [§ 1997e(a)]."). Here, Plaintiff has neither requested a hearing nor offered any reason to suppose that he has additional evidence bearing on the exhaustion issue. Accordingly, the Court resolves the matter of exhaustion, including any credibility issues, on the basis of the record.

## C. Plaintiff's Failure to Exhaust Available Administrative Remedies

### 1. The Sole Issue is Whether Administrative Remedies Were Available

Notwithstanding the aspects of Defendants' motion for summary judgment or Plaintiff's response addressing the alleged deliberate indifference Plaintiff suffered at the hands of Defendants, the Court will not conflate consideration of the exhaustion issue with an evaluation of the merits of Plaintiff's claims. Nor will the Court address any defenses related to the doctrine of qualified immunity until the exhaustion question has been resolved. If Plaintiff has failed to exhaust administrative remedies as required by the PLRA, his complaint must be dismissed, irrespective of the underlying merits of his claims or the

---

[11] Indeed, it is at least arguable that affording prisoners evidentiary hearings on exhaustion-related issues would frustrate the PLRA's purpose of curtailing inmate litigation.

10

existence of any defense. Simply put, as exhaustion of administrative remedies is a "precondition" to filing suit, exhaustion under § 1997e(a) is a threshold inquiry. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (*per curiam*); see also Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999).

Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." The PLRA's mandatory exhaustion requirement applies to all federal claims brought by any inmate. Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998). Simply put, as the plain language of § 1997e(a) makes clear, if an administrative remedy is "available," it must be exhausted. 42 U.S.C. § 1997e(a); see also Alexander, 159 F.3d at 1326 (explaining that under PLRA courts are "to focus solely on whether an administrative remedy program is 'available'").

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. \_\_\_, 2006 WL 1698937, at *7 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at *5 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005), *cert.*

11

*denied*, 548 U.S. __, 2006 WL 1788335 (2006). Put plainly, "a Georgia prisoner 'must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures.'"[12] Salas v. Tillman, No. 05-10399, 162 Fed. Appx. 918, 920, 2006 WL 122426, at *2 (11th Cir. Jan. 17, 2006) (quoting Johnson, 418 F.3d at 1155); see also Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999) ("Since appellant has not sought leave to file an out-of-time grievance, he cannot be considered to have exhausted his administrative remedies.").

Plaintiff submits, "Based on the circumstances and time frame of the incident, [he] was unable to fill out a Grievance Form." (Doc. no. 30, p. 2). In essence, Plaintiff argues that administrative remedies were not available to him. (See id. at 1-2). Relying on sworn affidavits, Defendants maintain that Plaintiff failed to exhaust administrative remedies prior to commencing the above-captioned case.

### 2. Administrative Remedies were Available to Plaintiff

The Eleventh Circuit's decision in Goebert v. Lee County, No. 06-10606, 2007 WL 4458122 (11th Cir. Dec. 21, 2007) is instructive on this issue. In that case, the defendants argued, *inter alia*, that "any remedy that is in place is 'available' to the inmate even if the inmate does not know, and cannot find out, about it." Id., 2007 WL 4458122, at *7. The defendants also contended that, because the plaintiff did not use the "correct form," administrative remedies were not exhausted.[13] Id., 2007 WL 4458122, at *10. Addressing

---

[12]Similarly, in order to exhaust all available administrative remedies, an inmate must pursue an administrative appeal if his grievance is denied. Moore v. Smith, 18 F. Supp.2d 1360, 1362 (N.D. Ga. 1998).

[13]Specifically, the defendants complained that the plaintiff used a "request form" instead of an official "grievance form." Goebert, 2007 WL 4458122, at *10.

the defendants' claims, the Eleventh Circuit held that an administrative remedy is not "available," within the meaning of the PLRA, if the remedy or its requirements are unknown to the inmate, and cannot be discovered through reasonable efforts by the time they are needed. Id., 2007 WL 4458122, at *7-9. Furthermore, the Eleventh Circuit determined that the "complaint was sufficient to exhaust [the plaintiff's] administrative remedies."[14] Id., 2007 WL 4458122, at *10. Notably, the Eleventh Circuit explained that the term "available," within the context of the PLRA, means that "the specific form of remedy the inmate sought could be had." Id., 2007 WL 4458122, at *8

Here, Plaintiff has not shown that, prior to the commencement of the above-captioned case, administrative remedies were not "available" to him. According to Plaintiff, on June 24, 2005, he requested a grievance form, but was told that there was a "shortage of forms." (Doc. no. 30, p. 2). Plaintiff contends that, on the morning of June 25, 2005, he filled out a "sick call request" form in lieu of a grievance form, but then he suffered a heart-attack that afternoon. (Id.). Unlike the plaintiff in Goebert, Plaintiff clearly knew about the MCJ grievance procedure at all times relevant to the above-captioned complaint. Indeed, Plaintiff admits that he requested a grievance form. Furthermore, Plaintiff does not contest Defendants' assertion that the MCJ grievance procedure was set forth in the Inmate Handbook, which was provided to inmates and posted in the inmate living quarters. Nevertheless, Plaintiff argues that his failure to properly exhaust the MCJ grievance procedure should be excused because there was a shortage of grievance forms.

---

[14]The Eleventh Circuit noted, "The complaint [the plaintiff] filed contained her name, her cell number, and the date and time she filed it. It cogently set out all of the facts constituting her grievance, a chronology of relevant events . . . , her efforts to get help, and what she wanted done." Goebert, 2007 WL 4458122, at *10

The Court rejects Plaintiff's self-serving and unsubstantiated averments.[15] First, it should be noted that Plaintiff failed to mention the alleged "shortage of forms" anywhere in his complaint or statement of claim. Indeed, the "Form to Be Used by Prisoners Filing a Complaint Under the Civil Rights Act, 42 U.S.C. § 1983 in the United States District Court for the Southern District of Georgia" requires that prisoner plaintiffs disclose whether they have utilized the grievance procedure, and if not, explain why not. (Doc. no. 1, p. 4). Under the portion of the complaint asking inmates to explain why the grievance procedure was not utilized, Plaintiff merely states, "The complaint concerns an incident that happened in another facility." (Id.). Furthermore, Plaintiff availed himself of the MCJ procedure for requesting medical services and managed to provide the Court with a copy of his June 24, 2005 "sick call request" form in support of his deliberate indifference claim. (Doc. no. 30, p. 10). However, rather than submitting the June 25, 2005 "sick call request" form in support of his exhaustion argument, Plaintiff merely asserts that "[it] somehow disappeared or they throwed [sic] away . . . ." (Id. at 2). Simply put, in light of the record, it is difficult to arrive at the conclusion that Plaintiff attempted to utilize the MCJ grievance procedure. As such, the Court is unpersuaded by Plaintiff's incredible "shortage of forms" allegations.

---

[15]The Court notes that it is not improper to demand some evidence beyond Plaintiff's own self-serving statements showing that administrative remedies were unavailable. See Kozuh v. Nichols, 185 Fed. Appx. 874 (11th Cir. 2006) (*per curiam*), *cert. denied*, ___ U.S. ___, 127 S. Ct. 1283 (2007) (affirming the district court's dismissal of the plaintiff's complaint for failure to exhaust because the plaintiff did not follow Florida's grievance process). In Kozuh, the Eleventh Circuit noted, "the record is devoid of any evidence that [the plaintiff] raised his issues in informal grievances, formal grievances and appeals." Id. at 877. Furthermore, the Eleventh Circuit determined, "there is no evidence that [the plaintiff] was thwarted from bringing his grievances or that the grievance process was unavailable. Instead, the evidence shows that [the plaintiff] was able to file numerous informal complaints and requests for information." Id. at 878.

Nevertheless, assuming *arguendo* that Plaintiff was temporarily unable to utilize the MCJ grievance procedure because there was a "shortage of forms," once administrative remedies became available, Plaintiff was obliged to exhaust them before commencing the above-captioned action. See Hilton v. Secretary for Dep't of Corr., No. 03-13492, 170 Fed. Appx. 600, 605, 2005 WL 3802979, at *5 (11th Cir. Nov. 1, 2005).[16] Here, after receiving treatment at the University Hospital in Augusta, Georgia, Plaintiff was transferred back to the MCJ, where he remained for several days. (Doc. no. 1, pp. 9; doc. no. 26, ¶ 18). Notably, Plaintiff does not allege, and the record does not indicate, that he resorted to the available remedy of filing a grievance once he returned to MCJ. Furthermore, Plaintiff makes no allegations concerning a shortage of forms after he returned to the MCJ. As such, assuming Plaintiff was temporarily unable to utilize the MCJ grievance procedure due to a "shortage of forms," Plaintiff still failed to comply with § 1997e(a) because, once the MCJ grievance procedure became available, he failed to avail himself of it prior to commencing the above-captioned case.

Moreover, assuming *arguendo* that Plaintiff filed a "sick call request" form in lieu of a grievance form, Plaintiff was also obliged to utilize all steps in the administrative process. Woodford, 2006 WL 1698937, at *5. As previously noted, the MCJ Chief Jailor responds in writing to all grievances, and inmates may appeal that decision to the Sheriff within 72 hours. (Doc. no. 26, Ex. 3). Here, not only does Plaintiff fail to indicate whether

---

[16] In Hilton, the plaintiff alleged that he could not exhaust administrative remedies because he was denied grievance forms. Id. The Eleventh Circuit explained that "Hilton's contention . . . [did] not entitle him to relief because he fail[ed] to allege that he was unable to obtain these forms once he was released from confinement." Id. Thus, the Eleventh Circuit has endorsed the Court's view that, once the exhaustion impediment is removed, an inmate's failure to exhaust administrative remedies is no longer be justified.

15

the Chief Jailor responded to his June 25, 2005 complaint, but he fails to indicate whether he appealed his complaint to the Sheriff. Although Plaintiff was transferred to the University Hospital in Augusta, Georgia shortly after allegedly filing his June 25, 2005 complaint, he returned to the MCJ after receiving treatment. Again, nothing in the record indicates that Plaintiff appealed his June 25, 2005 complaint to the Sheriff. Indeed, Defendant Durden, who is the MCJ Chief Jailor, submits that Plaintiff never filed an administrative appeal related to his 2005 incarceration at the MCJ. (Doc. no. 26, Durden Aff., ¶ 8). Furthermore, Plaintiff does not allege that he was unable to appeal his complaint to the Sheriff. As such, assuming Plaintiff filed a "sick call request" form in lieu of a grievance, he still failed to comply with § 1997e(a) because he did not fully utilize the MCJ grievance procedure prior to commencing the above-captioned case.

In sum, the Court is unpersuaded by Plaintiff's self-serving, unsubstantiated averments concerning the availability of administrative remedies at the MCJ. Even assuming that Plaintiff was temporarily unable to utilize the MCJ grievance procedure due to a shortage of grievance forms, Plaintiff still failed to exhaust available administrative remedies once they became available. Furthermore, there is nothing in the record to suggest that Plaintiff fully utilized the MCJ grievance procedure. As such, viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff failed to exhaust his "available" administrative remedy prior to commencing the above-captioned case. Therefore, the Court must determine whether Defendants are equitably estopped from relying on § 1997e(a).

16

### 3. Equitable Estoppel

To the extent that Plaintiff argues that Defendants should be equitably estopped from relying on § 1997e(a), such an argument is also without merit. Several courts of appeal have held that jail officials may, as a result of their own misconduct, become equitably estopped from relying upon § 1997e(a).[17] See, e.g., Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004) (*per curiam*); Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001); Wright v. Hollingsworth, 260 F.3d 357, 358 n.2 (5th Cir. 2001). Notably, the Eleventh Circuit has expressed concern when jail officials tell an inmate "unequivocally" that further resort to the administrative process is "futile, even prohibited." Tanner, 196 F.3d at 1194.[18] Taken together, these cases stand for the simple proposition that jail officials should not benefit from conduct which inhibits an inmate from properly exhausting administrative remedies.

Plaintiff contends, *inter alia*, that on June 24, 2005 jail officials told him that there was a shortage of grievance forms and that no additional forms would be created until the next day. Furthermore, Plaintiff submits that the June 25, 2005 "sick call request" form allegedly filled out in lieu of a grievance form has disappeared or was thrown away. Unlike the plaintiff in Tanner, Plaintiff has presented no documentary evidence indicating that jail officials affirmatively acted with the purpose of preventing him from utilizing the grievance process. Rather, Plaintiff submits that jail officials instructed him to fill out a "sick call

---

[17]Plaintiff bears the burden of establishing that Defendants are equitably estopped from relying on § 1997e(a). See Lewis v. Washington, 300 F.3d 829, 834 (7th Cir. 2002).

[18]In Tanner, the plaintiff relied upon actual documentary evidence proving that he had been instructed by prison officials that an administrative appeal was prohibited. Tanner, 196 F.3d at 1194.

17

request" form. As such, it is difficult for the Court to arrive at the conclusion that jail officials attempted to prevent Plaintiff for exhausting administrative remedies.

At best, Plaintiff has merely alleged that Defendants have attempted to conceal his partial utilization of the MCJ grievance procedure. As previously noted, Plaintiff alleges that his complaint "somehow disappeared or they throwed [sic] it away . . . ." (Doc. no. 30, p. 2). Nevertheless, nothing in the record suggests that Plaintiff's complaint was given to Defendants or that Defendants threw it away. Furthermore, Plaintiff has not alleged, and nothing in the record indicates, that Plaintiff was prevented from appealing his complaint due to the misconduct of Defendants. Simply put, Plaintiff has failed to establish that, as a result of Defendants' misconduct, he was prevented from utilizing the MCJ grievance procedure. Therefore, Plaintiff has not demonstrated that he is entitled to the extraordinary remedy of equitable estoppel. See Lewis, 300 F.3d at 834-35 (holding that, because the plaintiff's allegations concerning the prison officials' actions did not amount to affirmative misconduct, the plaintiff cannot prevail on equitable estoppel theory).

In sum, viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff failed to exhaust available administrative remedies prior to commencing the above-captioned complaint. Furthermore, Plaintiff has not demonstrated that Defendants should be equitably estopped from relying on § 1997e(a). Accordingly, Defendants should be entitled to judgment as a matter of fact and law.

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendant's motion for summary judgment pursuant Section 1997e(a) (doc. no. 23) be **GRANTED**, that the above-captioned complaint be **DISMISSED** without prejudice,[19] and that final judgment be **ENTERED** in favor of Defendants.

SO REPORTED and RECOMMENDED this 29th day of January, 2008, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[19] The Court declines to recommend that the instant case be dismissed with prejudice because it is the practice of the presiding District Judge to dismiss cases such as this without prejudice. Cf. Johnson, 418 F.3d at 1157 (quoting Marsh v. Jones, 53 F.3d 707, 710 (5th Cir. 1995)) ("[w]ithout the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one"). Nevertheless, the Court notes that the claims set forth in the above-captioned case are subject to the applicable two-year statute of limitations. Lawson v. Glover, 957 F.2d 801, 803 (11th Cir. 1987); Williams v. City of Atlanta, 794 F.2d 624, 626 (11th Cir. 1986). As such, an attempt to commence another action, pursuant to 42 U.S.C. § 1983, related to the events forming the basis of the above-captioned complaint may be time-barred.