IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

2010 APR 26  PM 2:43

CLERK _CADams
SO. DIST. OF GA.

GENE L. WILLIAMS,                    )
                                     )
            Plaintiff,               )
                                     )
      v.                             )        CV 106-037
                                     )
LOGAN MARSHALL, Sheriff, et al.,     )
                                     )
            Defendants.              )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Plaintiff, an inmate at the McDuffie County Jail ("the Jail") in Thomson, Georgia at the time of the events giving rise to his complaint, commenced the above-captioned case pursuant to 42 U.S.C. § 1983.[1] Plaintiff is *pro se* and is proceeding *in forma pauperis*. This matter comes before the Court on Defendants' supplemental motion for summary judgment. (Doc. no. 73). Plaintiff has filed an affidavit and brief opposing the motion. (Doc. nos. 77, 78). Defendants have also filed a reply brief, to which Plaintiff has filed a sur-reply. (Doc. nos. 80, 81). For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS**

---

[1] It appears that Plaintiff's claim may arise under <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1971), instead of § 1983, inasmuch as Plaintiff states that he was transported to the Jail by United States Marshals, (<u>see</u> doc. no. 77, ¶ 2), and "[t]he authority to maintain custody of federal prisoners is one created by federal law and reserved solely to the federal government," <u>Sarro v. Cornell Corr., Inc.</u>, 248 F. Supp. 2d 52, 64 (D.R.I. 2003). However, the Court need not resolve this issue, as § 1983 law generally applies to <u>Bivens</u> actions as well "[b]ecause of the similarity in the causes of action . . . ." <u>Wilson v. Blankenship</u>, 163 F.3d 1284, 1288 (11th Cir. 1998) (citing <u>Abella v. Rubino</u>, 63 F.3d 1063, 1065 (11th Cir. 1995) (*per curiam*)); <u>see also</u> <u>Abel v. Lappin</u>, 661 F. Supp. 2d 1361, 1372-73 & n.6 (S.D. Ga. 2009) (applying § 1983 law on deliberate indifference to claims of deliberate indifference raised in a <u>Bivens</u> action).

that Defendants' supplemental motion for summary judgment be **GRANTED IN PART** and

**DENIED IN PART**,[2] and that a final judgment be **ENTERED** in favor of Defendant Marshall

and Defendant Reynolds. The Court further **REPORTS** and **RECOMMENDS** that Plaintiff's

deliberate indifference claims against Defendant Crowder and Defendant Durden in their

individual capacities proceed to trial.

## I.  PROCEDURAL HISTORY

Before addressing the merits of Defendants' motion, a brief procedural history of this

case will be helpful in framing the issues presented herein.  The basis for Plaintiff's complaint

is that certain officials at the Jail were deliberately indifferent to his serious medical needs.

(See generally doc. no. 1).  In its first Report and Recommendation, this Court previously

recommended that Defendants' original motion for summary judgment be granted based on

Plaintiff's failure to exhaust administrative remedies.  (Doc. no. 35).  The Honorable William

T. Moore, Chief United States District Judge, adopted the first Report and Recommendation

and dismissed Plaintiff's case.  (Doc. no. 44).

Plaintiff appealed (see doc. no. 47), and the Eleventh Circuit vacated the dismissal and

remanded for consideration of whether administrative remedies were available to Plaintiff.

---

[2]In their supplemental motion for summary judgment, Defendants argue that they are entitled to summary judgment based on Plaintiff's failure to exhaust his administrative remedies.  (See generally doc. no. 73).  However, Defendants also request that if it is determined that they are not entitled to summary judgment on exhaustion grounds, then the Court consider the arguments raised in their original summary judgment motion, in which they contend that they are entitled to summary judgment on the merits of Plaintiff's deliberate indifference claims or are otherwise entitled to qualified immunity.  (See id. at 12; see also doc. no. 23).  As explained in detail below, Defendants should not be granted summary judgment on exhaustion grounds. See Part III.B infra.  Accordingly, in making this recommendation, the Court has considered the arguments raised in Defendants' original motion for summary judgment regarding the merits of Plaintiff's claims and whether Defendants are entitled to qualified immunity.

(Doc. no. 64). The Eleventh Circuit directed that three specific questions be addressed on remand: (1) whether a medical request form constitutes a grievance under the procedures used at the Jail; (2) whether the medical request form filled out by Plaintiff on June 24, 2005, constituted a grievance under those procedures in light of Goebert v. Lee County, 510 F.3d 1312 (11th Cir. 2007); and (3) if the medical request constituted a grievance, whether Plaintiff should have or could have known how to exhaust that grievance. (Id. at 8-10). Notably, in Goebert, the Eleventh Circuit found that a "request" for medical attention filled out by an inmate constituted a grievance where the request set out the facts constituting the grievance, a chronology of relevant events, the efforts to get help, and what the inmate wanted done. Goebert, 510 F.3d at 1325. The parties have briefed these issues (see doc. nos. 73, 77, 78, 80, 81), and this Court makes its recommendation on Defendants' supplemental motion for summary judgment taking into consideration this additional briefing, as well as the arguments made in the original motion for summary judgment.

## II.  STATEMENT OF FACTS

As alluded to above, the basis for Plaintiff's complaint is that Defendants failed to ensure that he saw a doctor while he was incarcerated at the Jail, even though he was a diabetic and had a heart condition, both of which Plaintiff alleged required medication that he never received while at the Jail. (See generally doc. no. 1). Based on the allegations in Plaintiff's complaint, the Court found that Plaintiff had arguably stated viable claims for deliberate indifference to a serious medical need and permitted those claims to proceed against all Defendants, namely (1) Defendant Logan Marshall, the Sheriff of McDuffie County, (2) Defendant Chris Durden, the Chief Jailer, (3) Defendants Marcus Reynolds, a detention officer

3

at the Jail, and (4) Defendant Imogene Crowder, another detention officer at the Jail. (See doc. no. 7, p. 2).

## A.    Plaintiff's Version[3]

Plaintiff's incarceration at the Jail began in June 2005. (Doc. no. 77, ¶ 2) (hereinafter "Pl.'s Aff."). Plaintiff states that he was escorted to the Jail by two United States Marshals, who handed an envelope containing a list of Plaintiff's medications to Defendant Marcus Reynolds, the detention officer who was working the booking desk at the Jail on the day of Plaintiff's arrival. (Id. ¶ 2; see also doc. no. 26, Reynolds Aff., ¶ 2 (hereinafter "Reynolds Aff.")). Plaintiff states that two types of insulin, aspirin, and two heart medications were on the list of medications. (Pl.'s Aff., ¶ 2). Plaintiff also states that two packets of pills were inside the manila envelope that was handed to Defendant Reynolds. (Id.). Plaintiff goes on to aver that he has been an insulin-dependent diabetic since 1996 and a heart patient since 2001. (Id.). He further states that he must take two injections of insulin per day for his diabetes. (Id.) Plaintiff maintains that while he was being booked, Defendant Reynolds informed him that he could not receive his evening dose of insulin or heart medicine until he saw the doctor, who was coming the next day. (Id.). Plaintiff states that Defendant Reynolds further informed him that he would make sure that Plaintiff saw the doctor the next day and then proceeded to enter all of Plaintiff's information "into the booking computer, including [his] medical conditions and medications." (Id.). Plaintiff goes on to state that he was then

---

[3]As discussed above, the first Report and Recommendation was vacated by the Eleventh Circuit and remanded for consideration of three specific issues related to exhaustion. On remand, the parties submitted new information in their respective briefs, including new affidavits from Plaintiff and Defendant Durden. (See doc. no. 77; doc. no. 26, Third Durden Aff.). Accordingly, the facts on which the Court bases the instant recommendation differ from those used in the first Report and Recommendation.

given a white jumpsuit, a towel and washcloth, a bar of soap, a toothbrush and toothpaste, and an ink pen. (Id.). Notably, Plaintiff maintains that he was not given a "rulebook" or any "oral instructions on how to exhaust a grievance." (Id.). Plaintiff further states that he "never saw instructions posted on any walls, advising inmates on how to file a grievance or an appeal of a grievance." (Id. ¶ 9).

Plaintiff states that the next day, he waited to see the doctor. (Id. ¶ 3). When Plaintiff had not seen the doctor by 1:00 p.m., he asked a hall officer when he could see the doctor, and the officer informed him that the doctor was gone and that Plaintiff would not be able to see the doctor until the next week. (Id.). Plaintiff states that he told this officer that he was an insulin-dependent diabetic and needed heart medication, and this officer told Plaintiff that he needed to speak with "the Head Jailer." (Id.). Plaintiff further avers that he was not allowed to test his blood sugar and did not receive his heart medicine that evening. (Id.). Plaintiff states that at this point, he began to get "stressed out" because he knew that his "glucose level was high." (Id.).

Plaintiff goes on to state that the next day, he did not receive his insulin or heart medicine and that by that evening, he had not seen anyone, including "the Head Jailer," about the issues with his medication. (Id.). However, Plaintiff does state that he spoke with "the sergeant," who also told him he needed to speak with "the Head Jailer" about his medications. (Id.). Plaintiff maintains that he did not receive his evening dose of insulin or heart medicine and that his "glucose level was so high" that he could not sleep that night. (Id.).

Plaintiff goes on to aver that the following day, June 24, 2005, he spoke with Defendant Crowder, another detention officer at the Jail, and informed her that he was an insulin-dependent diabetic and a heart patient and had not received his medications. (Id. ¶ 4;

5

see also doc. no. 26, Crowder Aff., ¶ 2 (hereinafter "Crowder Aff.")). Plaintiff states that he asked Defendant Crowder if the Jail had a glucometer that he could use to test his glucose. (Pl.'s Aff., ¶ 4). In response, Defendant Crowder told Plaintiff that she did not think the Jail had one and that if there was one, it probably did not work. (Id.). Plaintiff states that Defendant Crowder then told him that he should not worry because she was "binding his blood sugar in the name of the Lord Jesus Christ." (Id.).

Plaintiff maintains that later that same day, he finally spoke with Defendant Chris Durden, the Chief Jailer, or "the Head Jailer," as Plaintiff refers to him. (Id. ¶ 5; see also doc. no. 26, First Durden Aff., ¶ 2 (hereinafter "First Durden Aff.")). Plaintiff states that he told Defendant Durden that he had not received any medication while he had been at the Jail, despite the fact that he was an insulin-dependent diabetic and a heart patient. (Pl.'s Aff., ¶ 5). Plaintiff states that he also told Defendant Durden about his interactions with Defendant Reynolds during booking but that he was never "called out" to see the doctor, despite Defendant Reynolds' promise that Plaintiff would be placed on the list to see the doctor. (Id.). According to Plaintiff, Defendant Durden "didn't seem too concerned," even though Plaintiff told him he was "getting really ill." (Id.). Plaintiff states that he then asked Defendant Durden for a grievance form but was told that the Jail was "temporarily out of the forms" and that he should use a "medical request form [which would] serve the same purpose." (Id.). Plaintiff filled out this medical request form on June 24th, in which he stated that he had been at the Jail for three days, needed his diabetes medication, and needed to see a doctor. (Id.; see also doc. no. 30, p. 10). Nevertheless, Plaintiff maintains that he did not receive his diabetes or heart medications that night and that, again, he was not able to sleep because his glucose level "was extremely high" and because he was experiencing "mild[] chest pains." (Pl.'s Aff., ¶ 5).

Plaintiff states that the next day, June 25, 2005, he awoke "very sick" and did not receive his morning dose or insulin or heart medicine. (Id. ¶ 6). Plaintiff states that he got another medical request form and filled it out "in lieu of an administrative appeal of the first request/grievance." (Id.). Plaintiff states that on this second medical request form, he wrote that he had previously filled out a medical request as a grievance for "not getting [his] insulin [or] heart medicine" for several days. (Id.). Plaintiff further avers that in this second medical request form, he made complaints against (1) Defendant Marshall for having a doctor come to the Jail only once a week, (2) Defendant Durden for "not making sure [he] saw the doctor the day after he arrived" and for failing to get Plaintiff "medical attention" after Plaintiff informed him of his condition, (3) Defendant Crowder for not allowing him to test his blood sugar, and (4) Defendant Reynolds for lying to Plaintiff by telling him that he would make sure that Plaintiff saw the doctor the day after his arrival. (Id.). Plaintiff states that he handed this second medical request form to a hall officer and told her "to give it to the highest person over the Jail." (Id.).

One hour after doing so, Plaintiff "collapsed with a heart attack." (Id.). The paramedics were then called, and Plaintiff maintains that when they tested his blood sugar, "it was so high they couldn't get a reading on their glucometer." (Id. ¶ 7). Plaintiff further states that he was then strapped to a stretcher and that as the paramedics were carrying him down the hall, he heard Defendant Durden say, "I didn't even know he was a diabetic." (Id.). Plaintiff was transported to McDuffie County Hospital where his blood sugar was again tested and, according to Plaintiff, measured at "650." (Id.). Plaintiff states that his glucose level is "not supposed to go over 120." (Id.). Because Plaintiff was also having chest pains, he was transported to University Hospital, where Dr. Steven Broadwater purportedly told Plaintiff that

he had suffered "a diabetic stress heart attack from being denied insulin and heart medicine." (Id.).

## B. Defendants' Version

Before detailing Defendants' version of events leading up to Plaintiff's collapse on June 25, 2005, the Court notes that McDuffie County contracts with a private doctor to come to the Jail once a week. (Doc. no. 26, Marshall Aff., Ex. 1, p. 4) (hereinafter "Marshall Aff."). According to Defendant Marshall, if an inmate is admitted to the Jail with a medical condition requiring medication or who otherwise requires immediate medical care on a day when the doctor is not at the Jail, the inmate is taken either to the doctor's office or the emergency room in McDuffie County, at the inmate's request. (Id.). Such medical requests go to Defendant Durden or Lieutenant Reeves. (Id. at 4, 7). Defendant Marshall avers that he has found this policy of having a doctor come to the Jail once a week to be sufficient to care for the inmates' medical needs, in light of the provisions made for inmates who need immediate medical care on days when the doctor is not at the Jail. (Id. at 7-8).

With that background in mind, the Court turns to Defendants' version of the events leading up to Plaintiff's collapse. Defendant Reynolds denies Plaintiff's account of what occurred when Plaintiff was booked at the Jail. (Reynolds Aff., ¶ 3). Specifically, Defendant Reynolds states that at the time of the events complained of, he worked the night shift and did not have the authority to make doctor's appointments for inmates. (Id.). Defendant Reynolds further states that when his shift ended on the night he booked Plaintiff, he passed along the medical information provided to him about Plaintiff "in accordance with the . . . Jail's procedure[s] so that [Plaintiff] could receive appropriate medical care." (Id. ¶ 4).

Defendant Crowder also disputes that Plaintiff told her about his diabetic condition or requested to test his blood sugar. (Crowder Aff., ¶ 3). Rather, Defendant Crowder avers that at the time of Plaintiff's incarceration at the Jail, she had heard of diabetes, but was not aware of symptoms or treatment for the disease. (Id.). She further states that she was unfamiliar with the nature insulin or the effects that lack of insulin could have on a person suffering from diabetes. (Id.).

As noted above, Defendant Durden is the Chief Jailer. (First Durden Aff., ¶ 2). Defendant Durden also disputes Plaintiff's version of events, stating that up until Plaintiff was discovered collapsed on the Jail floor on June 25, 2005, he had not received any information that Plaintiff was diabetic, wanted to see a doctor, or needed insulin. (Doc. no. 26, Second Durden Aff., ¶ 2) (hereinafter "Second Durden Aff."). Defendant Durden further states that after he discovered Plaintiff on the Jail floor, he immediately called emergency medical personnel to attend to him. (Id. ¶ 3).

As Chief Jailer, Defendant Durden is the records custodian for the Jail (First Durden Aff., ¶ 2), and accordingly, he also provides information on the exhaustion issue. Specifically, Defendant Durden avers that a copy of the Jail's Inmate Handbook was posted in plain view to all inmates housed at the Jail at the time Plaintiff was incarcerated there. (Id. ¶ 4). The section in the Handbook addressing grievances provides:

**(H) GRIEVANCE**

(1) Any inmate shall be entitled to communicate legitimate complaints. Grievances will be in writing.

Grievances may be given to any staff member for prompt transmittal. All grievances must fully describe the factual basis and circumstances of the alleged incident or situation and include a specific complaint and signed by the staff member when picked up.

(Id., Ex. 1). Section (H) in the Handbook dealing with grievances does not address the appeal process for grievances, let alone that the grievances should be appealed. Rather, grievance appeals are addressed in a "McDuffie County Jail Policy and Procedure Directive," Policy Number: E-401. This Policy and Procedure Directive provides:

> **POLICY:**
>
> It is the policy of the McDuffie County Jail that inmates are permitted to submit grievances to the Jail Administration and that each grievance will receive a response.
>
> **PROCEDURE:**
>
> The Jail Administrator will devise a grievance form to be made available to all inmates on request.
>
> Completed grievance forms will be delivered to the Jail Administrator who will respond to the grievance.
>
> The grievance response to the inmate will be in writing.
>
> The decision of the Jail Administrator may be appealed to the Sheriff within seventy-two (72) hours of the receipt of the grievance decision.[]

(Id., Ex. 3).

According to Defendant Durden, all detention officers who deal with inmates are trained to provide information regarding the Jail's grievance and medical request process. (Id. ¶ 3). While Defendant Durden originally stated that grievance forms and grievance appeal forms are provided by Jail staff to inmates upon request (id. ¶ 5), on remand from the Eleventh Circuit, Defendant Durden submitted another affidavit in which he states that he cannot specifically recall how written procedures relating to grievances were provided to inmates at the time Plaintiff was incarcerated at the Jail, (doc. no. 73, Third Durden Aff., ¶ 6) (hereinafter "Third Durden Aff."). Defendant Durden states that he believes that appeal information was provided to inmates at that time, "if only orally." (Id.). As to Plaintiff's situation in particular,

Defendant Durden maintains that Plaintiff did not file any grievances or administrative appeals during his incarceration at the Jail. (First Durden Aff., ¶¶ 6, 8). Defendant Durden also avers that he never told Plaintiff that a medical request form could be submitted in lieu of or as a substitute for a grievance under the Jail's grievance procedure. (Third Durden Aff., ¶ 5). With those facts in mind, the Court turns to the merits of Defendants' motion.[4]

## III.  DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Applicable substantive law identifies which facts are material in a given case.[5] Anderson v.

---

[4]The Court is aware that Defendants also submit that Plaintiff's failure to respond to their requests for admission ("RFAs") establishes certain other material facts. (Doc. no. 32, pp. 1-2). However, as noted in the first Report and Recommendation, Fed. R. Civ. P. 36, which provides the rules applicable to RFAs, "is a time-saver, designed 'to expedite the trial and to relieve the parties of the cost of proving *facts that will not be disputed at trial*." Perez v. Miami-Dade County, 297 F.3d 1255, 1268 (11th Cir. 2002) (citation omitted). Here, the RFAs have been submitted in support of Defendants' supplemental motion for summary judgment in an apparent effort to utilize Rule 36 in a manner best paraphrased as "admit that we win the case." In re Carney, 258 F.3d 415, 422 (5th Cir. 2001) (Duplantier, J., dissenting); see also Perez, 297 F.3d at 1269 ("When a party . . . uses the rule . . . with the wild-eyed hope that the other side will fail to answer and therefore admit essential elements . . . the rule's time-saving function ceases . . . ."). The Court cautions Defendants that it does not look favorably on the use of such tactics, especially when certain other facts that they contend should be deemed admitted pursuant to Plaintiff's failure to respond to their RFAs clearly contradict the version of the facts that they present elsewhere in their filings with the Court. For example, Defendants attempt to use Plaintiff's failure to respond to one RFA to establish that Plaintiff did not suffer a physical injury. (See doc. no. 26, p. 7; doc. no. 28, p. 4). However, elsewhere Defendant Durden concedes that Plaintiff collapsed on the Jail floor on June 25, 2005, and that paramedics had to be called. (Second Durden Aff., ¶¶ 2-3). Accordingly, the Court declines to deem Plaintiff's failure to respond to Defendants' RFAs as admissions of certain other facts and uses only the material facts detailed in Part II above in making its recommendation.

[5]The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick, 333 F.3d at 1244.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Clark, 929 F.2d at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said

to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

## B.    Exhaustion of Administrative Remedies

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321 (1996), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's mandatory exhaustion requirement applies to all federal claims brought by any inmate. Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998). Indeed, under the PLRA, the Court may not inquire as to whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson v. Meadows, 418 F.3d 1152, 1155, 1156 (11th Cir. 2005), cert. denied, 548 U.S. 925 (2006).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson, 418 F.3d at 1159.

13

Put plainly, "a Georgia prisoner 'must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures.'" Salas v. Tillman, 162 Fed. App'x 918, 920 (11th Cir. 2006) (*per curiam*) (quoting Johnson, 418 F.3d at 1155). Similarly, in order to exhaust all available administrative remedies, an inmate must pursue an administrative appeal if his grievance is denied. Moore v. Smith, 18 F. Supp. 2d 1360, 1362 (N.D. Ga. 1998). Finally, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (*per curiam*); see also Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999).

Here, for Plaintiff to exhaust his administrative remedies at the Jail, he had to submit a grievance in writing to the Jail Administration, who is then required to respond to the grievance in writing. (First Durden Aff., Exs. 1, 3). Thereafter, the decision of the Jail Administrator may be appealed to the Sheriff within seventy-two (72) hours of the receipt of the grievance decision. (Id.). Notably, however, Policy Number: E-401 does not state that an inmate *must* appeal the grievance decision. Rather, as noted above, it provides that the "decision of the Jail Administrator *may be appealed* to the Sheriff . . . ." (Id., Ex. 3) (emphasis added). Here, Plaintiff did not file a grievance, but rather a medical request form, and Plaintiff claims that he used a second medical request form "in lieu of an appeal" when his first medical request form was not answered. (Pl.'s Aff., ¶ 6).

As discussed in Part I above, the Eleventh Circuit specifically directed that on remand, the following issues be addressed: (1) whether a medical request form constitutes a grievance under the procedures used at the Jail, (2) whether the medical request form filled out by Plaintiff on June 24, 2005 constituted a grievance under those procedures, in light of the

decision in <u>Goebert v. Lee County</u>, 510 F.3d 1312 (11th Cir. 2007), and (3) if the medical request constituted a grievance, whether Plaintiff should have or could have known how to exhaust that grievance. Plaintiff has answered the first two questions in the affirmative (<u>see</u> doc. no. 78, pp. 2-3), while Defendants have answered the first two questions in the negative, (<u>see</u> doc. no. 73, pp. 2-3). However, Defendants do not even mention <u>Goebert</u> in answering these two questions, much less explain their answers in light of <u>Goebert</u>.

As to the first issue, the Court concludes that a medical request form constitutes a grievance under the procedures used at the Jail. Under the "Grievance" heading in the Inmate Handbook, it states that any inmate shall be entitled to communicate legitimate complaints and that grievances must be in writing. (<u>See</u> First Durden Aff., Ex. 1). The directions given to the inmate further state that grievances must describe the specific factual basis and circumstances of the alleged incident. (<u>Id.</u>). Notably, nowhere in this section is it specified what form is to be used to communicate a grievance. Thus, the Court concludes that a medical request form that communicates a legitimate complaint and provides the factual basis and circumstances of the alleged incident is included in this description of a grievance, as provided in the Inmate Handbook.

Having made that determination, the Court concludes that the medical request form filled out by Plaintiff on June 24th constitutes a grievance. As explained above, in <u>Goebert</u>, the Eleventh Circuit found that a "request" for medical attention filled out by an inmate constituted a grievance where the request set out the facts constituting the grievance, a chronology of relevant events, the efforts to get help, and what the inmate wanted done. <u>Goebert</u>, 510 F.3d at 1325. Here, the request submitted by Plaintiff states as follows: "I've been in here for 3 days. I need my diabetes medicine. I need to see the doctor." (Doc. no. 30,

15

p. 10). While this request is briefer and less detailed than the request filed by the inmate in Goebert, the Court nonetheless finds that it constitutes a grievance under the procedures at the Jail. Indeed, the request communicates Plaintiff's dissatisfaction with the delay in his medical treatment, specifically stating that he has not received his medicine and that he wants to see a doctor. Thus, the Court finds that the June 24th medical request form constitutes a grievance.

Having found that the June 24th medical request form constitutes a grievance, the Court must consider whether Plaintiff exhausted that grievance. In doing so, the Court must determine, as directed by the Eleventh Circuit, whether Plaintiff should have or could have known how to exhaust that grievance, i.e., whether all administrative remedies were available to Plaintiff. (See doc. no. 64, p. 10). Plaintiff avers that after he was booked at the Jail, he did not receive any rule book or any oral instructions on how to exhaust a grievance. (Pl.'s Aff., ¶ 2). Plaintiff further avers that he never saw "instructions posted on any walls advising inmates on how to file a grievance or an appeal of a grievance." (Id. ¶ 9). On the other hand, Defendants contend that the Inmate Handbook, including the grievance procedure, is posted in plain view to all inmates housed at the Jail. (First Durden Aff., ¶ 4). However, as noted by the Eleventh Circuit, while the Inmate Handbook states that inmates are allowed to file written grievances, the Handbook makes no reference as to how to exhaust the grievance procedure at the Jail. (Doc. no. 64, pp. 8-9). Rather, the grievance procedure is outlined in Policy Number: E-401, which is not included or referenced in the Handbook. (Id.; see also doc. no. 26, Ex. 3). The Court also notes that, following remand, Defendants submitted another affidavit from Defendant Durden stating that he believed grievance appeal information was provided to inmates at the time Plaintiff was incarcerated at the Jail, "*if only orally.*" (Third Durden Aff., ¶ 6) (emphasis added).

16

An administrative remedy is not available to an inmate if the "inmate does not know about, and cannot discover through reasonable effort [the remedies or requirements for the remedies] by the time they are needed." <u>Goebert</u>, 510 F.3d at 1322. Here, the Court finds that there is an issue of material fact as to whether Plaintiff's administrative remedies were available to him. Defendants have stated that information regarding how to exhaust a grievance was provided to inmates, if at all, orally. (Third Durden Aff., ¶ 6). However, Plaintiff states under oath that he never received such oral instructions and that he never saw instructions posted on any walls that informed him of how to exhaust a grievance. (Pl.'s Aff., ¶¶ 2, 9). While Plaintiff states that he filed a second medical request form in lieu of an appeal (<u>id.</u> ¶ 6), a dispute still remains as to whether Plaintiff was even provided with information about how to appeal his grievance. Accordingly, the Court finds that Defendants are not entitled to summary judgment based on Plaintiff's failure to exhaust his administrative remedies.[6, 7]

---

[6]The Court is aware of Defendants' argument that Plaintiff failed to properly exhaust his administrative remedies because he did not name any Defendant in his medical request form. (Doc. no. 73, pp. 4-6). In support of this argument, Defendants cite the Eleventh Circuit case of <u>Brown v. Sikes</u>, 212 F.3d 1205 (11th Cir. 2005), and quote the following language from that opinion:

> Section 1997e(a) requires a prisoner to exhaust all "available" administrative remedies, and implicit in that requirement is an obligation on the prisoner to provide those officials who will pass upon the grievance all the relevant information he has, including the identity of any officials he thinks have wronged him and any witnesses.

<u>Brown</u>, 212 F.3d at 1207-08.

However, Defendants have taken this quote out of context. Indeed, immediately prior to this quoted language, the Eleventh Circuit framed the issue before it as follows and briefly answered the question before proceeding to its reasoning:

## C.    Deliberate Indifference Claims

### 1.    Defendant Marshall

Having found that Defendants are not entitled to summary judgment based on failure

to exhaust, the Court turns to the merits of Plaintiff's deliberate indifference claims against

each Defendant, beginning with Defendant Marshall.  While Defendants contend that Plaintiff

has sued Defendant Marshall in his official capacity only (see doc. no. 25, p. 13), a review of

Plaintiff's complaint reveals that Plaintiff has sued Defendant Marshall in both his individual

---

> The question before us is whether the § 1997e(a) exhaustion requirement
> always prohibits a prisoner from suing any defendant other than those named
> in the administrative grievance the prisoner filed. *We think that it does not*.
> Instead, we conclude that while § 1997e(a) requires that a prisoner provide
> as much relevant information as he reasonably can in the administrative
> grievance process, it does not require that he do more than that.

Id. at 1207 (emphasis added).  In other words, the key for determining whether an inmate has
exhausted is the issue presented in the grievance, not the persons named therein, and whether
the inmate has provided all the information available to him.  Defendants' argument also
fails to account for the fact that the Eleventh Circuit went on to hold in Brown that the
district court erred in dismissing the prisoner's complaint for failure to exhaust simply
because he did not name the defendants in his grievances.  Id. at 1210.  Accordingly,
Defendants' argument that they are entitled to summary judgment because Plaintiff failed to
properly exhaust his administrative remedies by not naming any Defendant in his medical
request form (which the Court has found constitutes a grievance under the procedures at the
Jail) is without merit.

[7]The Court also notes that in another case naming some of the same defendants as
those named in the instant action, the undersigned recommended that summary judgment not
be granted on exhaustion grounds because it was not clear whether the administrative remedy
process used at the Jail was available to the plaintiff in that case either.  See Burkett v.
Marshall, CV 107-080, doc. no. 43, pp. 11-12 (S.D. Ga. Jan. 29, 2009).  Notably, this
recommendation was adopted without objection by the presiding District Judge as the
opinion of the Court.  Id., doc. no. 46.  Thus, although the defendants named in Burkett
ultimately received summary judgment on the merits of the plaintiff's claims, see id. doc. no.
43, pp. 12-17, *adopted by* doc. no. 46, it is worth noting that a genuine dispute regarding the
availability of administrative remedies at the Jail existed in Burkett as well, and the
defendants in that case did not object to that finding.

and official capacity, based on his policy of having a doctor come to the Jail only once a week. (See doc. no. 1, p. 10). With respect to the official capacity claims, the Eleventh Circuit has held that a Georgia sheriff sued in his official capacity functions as an arm of the State and that a sheriff's "authority and duty to administer the jail in his jurisdiction flows from the State, not [the] County." Manders v. Lee, 338 F.3d 1304, 1305, 1315 (11th Cir. 2003) (en banc). Therefore, sheriffs sued in their official capacity are entitled to Eleventh Amendment immunity. See Purcell v. Toombs County, Ga., 400 F.3d 1313, 1325-26 (11th Cir. 2005) (citing Manders, 338 F.3d at 1315). Accordingly, Plaintiff has failed to state a claim for relief against Defendant Marshall in his official capacity, and Defendant Marshall is entitled to summary judgment on Plaintiff's official capacity claims against him.

Turning next to Plaintiff's individual capacity claims against Defendant Marshall, it is well-settled that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). Rather, to hold an official in a supervisory position liable, Plaintiff must demonstrate that either (1) the supervisor personally participated in the alleged constitutional violation or (2) there is a causal connection between actions of the supervising official and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). Plaintiff has made no allegation that Defendant Marshall personally participated in the events leading up to his collapse. Accordingly, Plaintiff must demonstrate a causal connection between Defendant Marshall's actions and the alleged deliberate indifference to Plaintiff's medical needs.

19

A causal connection can be established "when a history of widespread abuse[8] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Here, Plaintiff does not allege any history of widespread abuse or that Defendant Marshall directed his subordinates to act unlawfully (or knew that they were doing so and failed to stop them). Rather, Plaintiff takes issue with Defendant Marshall's policy of having a doctor come to the Jail only once a week.

That said, in order for Plaintiff to hold Defendant Marshall liable for his injuries pursuant to this policy, Plaintiff must show that Defendant Marshall had notice that the "polic[y] . . . [was] 'likely to result in the violation of a constitutional right.'" Williams v. Limestone County, Ala., 198 Fed. App'x 893, 897 (11th Cir. 2006) (*per curiam*) (quoting Belcher v. City of Foley, Ala., 30 F.3d 1390, 1398 (11th Cir. 1994)). In his deposition, Defendant Marshall responded affirmatively when Plaintiff asked him whether he had found that having a doctor come to the Jail once a week had been sufficient to address the medical needs of inmates incarcerated there. (Marshall Aff., Ex. 1, pp. 7-8). Defendant Marshall

---

[8]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

further explained that he had found this policy to be sufficient to address inmates' medical needs because if an inmate requires immediate medical care on days when the doctor is not at the Jail, the inmate is transported to the doctor's office or the emergency room, at the inmate's request. (Id. at 4, 8).

Based on these sworn statements by Defendant Marshall, it cannot be said that Defendant Marshall had any notice that the policy of having a doctor come to the Jail once a week was likely to result in a deprivation of Plaintiff's constitutional rights. Notably, Plaintiff has not provided any evidence that any other inmates at the Jail besides himself were deprived of medical care as a result of this policy, nor has he otherwise shown that Defendant Marshall had notice that this policy would likely result in a constitutional violation. Accordingly, Defendant Marshall is entitled to summary judgment on Plaintiff's individual capacity claims against him as well.

## 2. Defendants Reynolds, Crowder, and Durden

Turning to Plaintiff's claims against Defendants Reynolds, Crowder, and Durden, the Court begins by noting that, like Defendant Marshall, Plaintiff has sued these Defendants in their official and individual capacities. (See doc. no. 1, pp. 9-10). However, Plaintiff's official capacity claims against these Defendants fail as a matter of law. When a state officer is sued in his or her official capacity, the suit is actually against the state. Kentucky v. Graham, 473 U.S. 159, 166 (1985). Consequently, a plaintiff seeking money damages from a defendant in his or her official capacity is, in effect, seeking that award from the state. Id. Under the Eleventh Amendment, one cannot sue a state for damages at law unless the state waives its protection. Id. at 169. Thus, to the extent that Plaintiff is suing these Defendants in their official capacities, such claims fail as a matter of law. Therefore, Defendants Reynolds,

Crowder, and Durden are entitled to summary judgment on all official capacity claims against them.

As to Plaintiff's claims against these Defendants in their individual capacities, to survive Defendants' motion for summary judgment on his claims of deliberate indifference, Plaintiff must produce evidence from which a reasonable jury could conclude: (1) that he had an objectively serious medical need, (2) that Defendants acted with deliberate indifference to that need, and (3) that his injury was caused by Defendants' wrongful conduct. Goebert, 510 F.3d at 1326. Although the parties do not present arguments regarding whether Plaintiff's diabetes and heart condition were serious medical needs, construing the facts of the case in the light most favorable to Plaintiff, the Court assumes *arguendo* that these conditions did constitute serious medical needs under the first prong of the Goebert test.[9]

To show that Defendants Reynolds, Crowder, and Durden were deliberately indifferent to his medical needs under the second prong of the Goebert test, Plaintiff must offer some proof that they: (1) were subjectively aware of a serious risk to Plaintiff's health, and (2) that Defendants disregarded that risk by (3) following a course of action which constituted "more than mere negligence." Goebert, 510 F.3d at 1326. In addition, the prisoner plaintiff seeking to show that a delay in medical treatment amounted to deliberate indifference "must place

_____

[9]Other courts have found that similar, if not identical, conditions qualify as serious medical needs. See Carretson v. City of Madison Heights, 407 F.3d 789, 797 (6th Cir. 2005) (diabetic pre-trial detainee who required insulin injections had a "sufficiently serious" medical need); Lolli v. County of Orange, 351 F.3d 410, 419 (9th Cir. 2003) (finding that diabetes constitutes an objectively serious medical need); Oliver v. Greenwell, No. 1:05-CV-111, 2005 WL 2406015, at *2 (E.D. Mo. Sept. 29, 2005) ("A heart condition requiring medication is a serious medical need . . . ."); see also Adams v. Franklin, 111 F. Supp. 2d 1255, 1270 (M.D. Ala. 2000) (noting that "prior binding case law" establishes that where an official refuses to provide treatment for a prisoner's heart disease, the prisoner states a claim for relief under § 1983 (citing Bilton v. Beto, 470 F.2d 988 (5th Cir. 1972))).

verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994), *abrogated in part on other grounds by* Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002)); see also Farrow v. West, 320 F.3d 1235, 1244 n.12 (11th Cir. 2003) ("In Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L.Ed.2d 666 (2002), the Supreme Court criticized part of the qualified immunity analysis in Hill, but not Hill's analysis of what constitutes a serious medical need of prisoners.").

In its analysis under the second prong of the Goebert test, the Court begins with Plaintiff's claim against Defendant Reynolds. As noted above, Plaintiff avers that Defendant Reynolds promised Plaintiff on the day of his arrival at the Jail that he would schedule Plaintiff to see the doctor the next day so that Plaintiff could begin receiving his diabetes and heart medications. (Pl.'s Aff., ¶ 2). Defendant Reynolds specifically denies this account and states that he did not have the authority to make doctor's appointments for inmates. (Reynolds Aff., ¶ 3). Defendant Reynolds also states that when he finished his shift after Plaintiff arrived at the Jail, he passed along the medical information provided to him about Plaintiff to the oncoming shift so that Plaintiff "could receive appropriate medical care." (Id. ¶ 4).

Notably, Plaintiff presents nothing in his affidavit to contradict Defendant Reynolds' sworn assertions that he did not have the authority to make doctor's appointments for inmates and that he passed along Plaintiff's medical information to the oncoming shift so that Plaintiff could get the medical care he needed. While the parties dispute whether Defendant Reynolds promised Plaintiff that he would be placed on the list to see the doctor, the Court does not find that this particular factual dispute is enough to defeat summary judgment as to Defendant Reynolds. Rather, the undisputed facts demonstrate that Defendant Reynolds could not make

medical appointments for inmates. The undisputed facts also demonstrate that Defendant Reynolds acted appropriately in passing along Plaintiff's medical information to someone authorized to schedule medical appointments so that Plaintiff would be provided medical care from persons who were authorized to do so. Although Plaintiff did not see a doctor or receive his medication, Defendant Reynolds did not act with deliberate indifference because he did not disregard a serious risk to Plaintiff's health. Accordingly, Defendant Reynolds is entitled to summary judgment on Plaintff's individual capacity claim against him.

As to Plaintiff's claim against Defendant Crowder, Plaintiff states in his sworn affidavit that he informed Defendant Crowder that he was an insulin-dependent diabetic and a heart patient and that he had not received his medication. (Pl.'s Aff., ¶ 4). He further states that when he requested to test his blood sugar, Defendant Crowder told him that she did not think the Jail had a glucometer and that if there was one, it probably did not work. (Id.). Plaintiff states that Defendant Crowder then told him that he should not worry because she was "binding his blood sugar in the name of the Lord Jesus Christ." (Id.). However, Defendant Crowder denies this account of Plaintiff's interactions with her. (Crowder Aff., ¶ 3). Rather, she states that at the time Plaintiff was incarcerated at the Jail, she had heard of diabetes, but she was not aware of its symptoms or treatment, nor was she aware of the nature of insulin or the results that lack of insulin could have on a diabetic. (Id. ¶ 4).

The crux of Plaintiff's claim against Defendant Crowder is that she was aware Plaintiff needed his insulin and heart medication but failed to notify the appropriate medical personnel. The Supreme Court has held that in order to be liable for violations of the Eighth Amendment, including deliberate indifference to a serious medical need, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm

24

exists, *and [s]he must also draw the inference.*" <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994) (emphasis added). Thus, "an official's failure to alleviate a significant risk that [s]he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment" in violation of the Eighth Amendment. <u>Id.</u> at 838. However, the Supreme Court also noted in <u>Farmer</u> that "[w]hether an official had the requisite knowledge is a question of fact subject to demonstration in the usual ways, and a factfinder may conclude that the official knew of a substantial risk from the very fact that it was obvious." <u>Id.</u> at 826. In other words, if a reasonable jury could infer that a prison official was subjectively aware of the risk, then the plaintiff should be allowed to submit to the jury the question of whether the prison official had the requisite knowledge to be held liable for an Eighth Amendment violation. <u>See</u> <u>Bozeman v. Orum</u>, 422 F.3d 1265, 1272-73 (11th Cir. 2005) (*per curiam*) (finding that question of whether the defendants were subjectively aware of an obvious risk to a prisoner's health should be submitted to the jury); <u>see also</u> <u>Goebert</u>, 510 F.3d at 1327-29 (finding that prison official was not entitled to summary judgment on the merits of inmate's deliberate indifference claim because, *inter alia*, "a factfinder could reasonably conclude from the evidence" that the official was aware of a serious risk to the inmate's health).

Here, the parties dispute whether Plaintiff made Defendant Crowder aware that he needed his diabetes and heart medications and to test his blood sugar. Indeed, Plaintiff avers that he told Defendant Crowder about these issues, while Defendant Crowder denies that Plaintiff ever told her this. Thus, the Court finds that there is a genuine dispute of material fact as to whether Defendant Crowder was aware of a serious risk to Plaintiff's health. <u>See</u> <u>Goebert</u>, 510 F.3d at 1326. The Court is of course aware that Plaintiff has offered nothing to contradict Defendant Crowder's sworn statement that at the time of the events giving rise to

25

Plaintiff's complaint, she was unaware of the treatment and symptoms for diabetes or of the effects the lack of insulin can have on a diabetic. (See Crowder Aff., ¶ 3). However, under Farmer, Plaintiff is entitled to have a jury decide if Defendant Crowder was subjectively aware of a serious risk to Plaintiff's health.[10]

The Court next turns to Plaintiff's claim against Defendant Durden. Plaintiff avers in his affidavit that he also told Defendant Durden he was an insulin-dependent diabetic, as well as a heart patient, and that he had not received any medicine since his arrival at the Jail. (Pl.'s Aff., ¶ 5). Plaintiff also avers that he told Defendant Durden about his interactions with Defendant Reynolds when he arrived at the Jail but that he still had not seen a doctor. (Id.). Plaintiff further maintains that he told Defendant Durden that he was "getting really ill" but that Defendant Durden did not respond. (Id.). Plaintiff also swears that Defendant Durden was the one who told him to fill out a medical request form. (Id.). On the other hand, Defendant Durden swears in his own affidavit that before he discovered Plaintiff collapsed on the floor of the Jail, he had no knowledge that Plaintiff "was diabetic, desired to see a doctor, or needed insulin." (Second Durden Aff., ¶ 2). Defendant Durden further avers that as soon as he discovered Plaintiff on the floor of the Jail, he immediately called the paramedics to attend to him. (Id. ¶ 3).

Also of note with respect to Plaintiff's claims against Defendant Durden are Defendant Marshall's statements at his deposition. (See Marshall Aff., Ex. 1). When asked during his

---

[10]Of course, Plaintiff's claim against Defendant Crowder will only proceed to trial if Plaintiff has placed verifying medical evidence in the record establishing the detrimental effect of the delay in treatment, see Hill, 40 F.3d at 1188, abrogated in part on other grounds by Hope, 536 U.S. at 739 n.9, and if Defendant Crowder is not entitled to qualified immunity. The Court addresses these issues below.

deposition to whom medical requests are directed, Defendant Marshall stated, "[T]hey go to Lieutenant Reeves *and Captain Durden*." (Id. at 4) (emphasis added). Defendant Marshall further testified that if an inmate fills out a medical request, "the captain" - i.e., Defendant Durden - looks over the request and places the inmate on the list to see the doctor. (Id. at 7).

Here, it is undisputed that Plaintiff filled out a medical request on June 24, 2005, in which he stated that he had been at the Jail for 3 days and that he needed his "diabetic medication" and to see a doctor. (Doc. no. 30, ¶ 3). It is also undisputed that Defendant Durden was one of the officials at the Jail who received medical requests and was responsible for placing inmates on the list to see the doctor. (Marshall Aff., Ex. 1, pp. 4, 7). The Eleventh Circuit has held that deliberate indifference may be established where a prison official, even if not a prison doctor, delays access to requested medical care. Barfield v. Brierton, 883 F.2d 923, 938 (11th Cir. 1989) ("The requisite deliberate indifference may be established by a showing that prison doctors or prison guards intentionally denied or delayed access to medical care requested by a prisoner."). The Court is of course aware that "[m]ere incidents of negligence . . . do not rise to the level of constitutional violations." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991). However, given Defendant Durden's responsibility for reviewing medical requests and placing inmates on the list to see the doctor, coupled with the dispute about whether Plaintiff also told Defendant Durden in person that he was a diabetic, had not received insulin, and needed to see a doctor, the Court concludes that, as with Defendant Crowder, there is a genuine dispute as to whether Defendant Durden was subjectively aware of a serious risk to Plaintiff's health. See Goebert, 510 F.3d at 1326.

Having determined that there is a genuine dispute as to whether Defendant Crowder and Defendant Durden were subjectively aware of a serious risk to Plaintiff's health, the Court

turns to the issue of "verifying medical evidence." As noted above, since Plaintiff is attempting to establish that a delay in medical treatment constituted deliberate indifference, he "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." Hill, 40 F.3d at 1188, *abrogated in part on other grounds by* Hope, 536 U.S. at 739 n.9. While Defendants argue that the only evidence Plaintiff has submitted on this issue is his own summary about Dr. Broadwater's opinions (see doc. no. 80, p. 6), a review of the docket reveals otherwise. Indeed, Plaintiff has submitted a letter written by Dr. Broadwater, who treated Plaintiff at University Hospital following his collapse at the Jail. (Doc. no. 30, Ex. A).[11] In his letter, Dr. Broadwater states that "it is unreasonable to expect an insulin dependent diabetic to go several days without the ability to have his blood sugar[] checked and without access to the insulin needed to control his blood sugar[]." (Id. at 1). Dr. Broadwater goes on to state that blood sugar levels greater than 400, such as Plaintiff's at the time of his admission to University Hospital, "certainly can lead to angina and puts [Plaintiff] at risk for other medical issues." (Id.). Dr. Broadwater concludes his letter by stating that "more attention should have been devoted to seeing to it that [Plaintiff] had the appropriate care from the standpoint of being able to check his blood sugars as necessary and [being given] the opportunity to take appropriate doses of insulin . . . ." (Id. at 2).

Drawing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has presented sufficient evidence, in the form of Dr. Broadwater's letter, that he suffered a

---

[11]Because the opinions contained in Dr. Broadwater's letter may be reduced to admissible form at trial (for example, in the form of testimony from Dr. Broadwater), the Court appropriately relies on the opinions contained in the letter in making its recommendation. See Macuba v. Deboer, 193 F.3d 1316, 1322-23 (11th Cir. 1999) (citations omitted) (noting that "hearsay 'cannot be considered on a motion for summary judgment'" unless it can be "reduced to admissible evidence at trial").

detrimental effect as a result of not receiving his medications. Accordingly, Defendant Crowder and Defendant Durden are not entitled to summary judgment on the merits of Plaintiff's deliberate indifference claims against them in their individual capacities.

## D.    Qualified Immunity

As the Court has recommended that summary judgment be entered for Defendants Marshall and Reynolds on the merits of deliberate indifference claims asserted against them, the Court will only address Defendant Crowder's and Defendant Durden's claims for qualified immunity. Defendants Crowder and Durden contend that, even if they are not entitled to summary judgment on the merits of Plaintiff's claims, they are nonetheless entitled to qualified immunity. (Doc. no. 25, pp. 12-13).

State officials, such as Defendant Crowder and Defendant Durden, acting within their discretionary authority are entitled to immunity from suit unless their actions violate a "clearly established" right "of which a reasonable person would have known." Powell v. Georgia Dep't of Corr., 114 F.3d 1074, 1077 (11th Cir. 1997) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Stated another way, "[a] right is clearly established if, in light of already-existing law, the unlawfulness of the conduct is apparent, and if a constitutional rule applies with obvious clarity to give an official fair warning that violating that right is actionable." Bennett v. Hendrix, 423 F.3d 1247, 1255 (11th Cir. 2005) (internal citations and quotations omitted). "If reasonable public officials could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity." Storck v. City of Coral Springs, 354 F.3d 1307, 1314 (11th Cir. 2003). Also, the Eleventh Circuit has held: "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decision of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case

29

arose." Jenkins by Hall v. Talladega City Bd. of Educ., 115 F.3d 821, 826 n.4 (11th Cir. 1997).

Here, Defendants Crowder and Durden do not rely on any specific case to support their claims that they are entitled to qualified immunity. Rather, they simply argue that Plaintiff has failed to demonstrate that they violated any clearly established right. (Doc. no. 25, pp. 12-13). That said, the Eleventh Circuit has repeatedly held that "an official acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment, knowing that the inmate has a life-threatening condition or an urgent medical condition that would be exacerbated by the delay." Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1425 (11th Cir. 1997) (citations omitted); see also Barfield, 883 F.2d at 938 ("The requisite deliberate indifference may be established by a showing that prison doctors or prison guards intentionally denied or delayed access to medical care requested by a prisoner."). Of course, the Court is aware that "[t]his general statement of law ordinarily does not preclude qualified immunity in cases involving a delay in medical treatment" and that because such "cases are highly fact-specific and involve an array of circumstances," a case-by-case determination must be made as to whether a prison official is entitled to qualified immunity. Bozeman, 422 F.3d at 1274.

Viewing Plaintiff's statements and all reasonable inferences that may be drawn from those statements in the light most favorable to Plaintiff, the Court disagrees with the arguments made by Defendant Crowder and Defendant Durden that they are entitled to qualified immunity. With respect to Plaintiff's claims against Defendant Crowder, Plaintiff has averred that he told Defendant Crowder that he needed to test his blood sugar, that he was a diabetic and a heart patient, and that he needed his medications. (Pl.'s Aff., ¶ 4). Furthermore, with

respect to his claims against Defendant Durden, Plaintiff has averred that he told Defendant Durden about his medical conditions and that he had not received any medication for these conditions since he had been at the Jail. (Id. ¶ 5). Plaintiff also avers that he told Defendant Durden that he was "getting really ill" but that Defendant Durden "didn't seem too concerned." (Id.). Moreover, it is undisputed that Defendant Durden is responsible for handling inmate requests for medical care (Marshall Aff., Ex. 1, pp. 4, 7), and Plaintiff has averred that Defendant Durden told him to fill out a medical request form. (Pl.'s Aff., ¶ 6). However, Plaintiff was never placed on a list to see a doctor or transported to the doctor's office or the McDuffie County emergency room until his collapse on June 25, 2005.

Thus, in light of Plaintiff's statements and the holding in Lancaster, the Court finds that Plaintiff has claimed that "a reasonable person" in Defendant Crowder's and Defendant Durden's positions would have known that delaying Plaintiff's access to treatment for his diabetes and heart condition violated Plaintiff's "clearly established" constitutional rights. Accordingly, Defendant Crowder and Defendant Durden are not entitled to qualified immunity, and Plaintiff's deliberate indifference claims against Defendant Crowder and Defendant Durden in their individual capacities should proceed to trial.

## IV. CONCLUSION

For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED IN PART** and **DENIED IN PART**, and that a final judgment be **ENTERED** in favor of Defendant Marshall and Defendant Reynolds. The Court further **REPORTS** and **RECOMMENDS** that Plaintiff's deliberate indifference claims against Defendant Crowder and Defendant Durden in their individual capacities proceed to trial.

SO REPORTED and RECOMMENDED this 26th day of April, 2010, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE